991 So.2d 941 (2008)
OUTPUT, INC., Appellant,
v.
DANKA BUSINESS SYSTEMS, INC., and Canon U.S.A., Inc., Appellees.
No. 4D07-2008.
District Court of Appeal of Florida, Fourth District.
September 3, 2008.
*942 Mark F. Booth of Rogers, Morris & Ziegler, LLP, for appellant.
Thomas M. Wood and Eoghan "Owen" P. McGill of Shumaker, Loop & Kendrick, LLP, Tampa, for appellee Danka Business Systems, Inc.
Christopher N. Bellows, Marilyn J. Holifield, and Peter Nemerovski of Holland & Knight LLP, Miami, for appellee Canon U.S.A., Inc.
GERBER, JONATHAN D., Associate Judge.
This appeal presents the question of whether a plaintiff can state a cause of action for fraudulent misrepresentation when the defendant's alleged misrepresentation is included in a later contract to which the defendant is not a party. We hold that a plaintiff can state such a cause of action under the facts of this case.
The trial court's final judgment provides a very detailed description of the facts. In 2002, Pamela Anderson, the owner of Output, Inc., desired to purchase a color laser copier for her digital printing business. Anderson met with Harriet Locker, a sales representative for Danka Business Systems, Inc., to discuss the Canon Color Laser Copier 5000 (CLC 5000). Because the CLC 5000 was a new Canon product, Locker had very limited knowledge of the machine, so she arranged to have a Canon representative present at a later meeting.
The second meeting was attended by Output's Anderson and her assistant Vidal *943 Garcia, Danka's Locker and technical representative Alex Wright, and Canon technical representative William Hoffman. Hoffman represented that the CLC 5000 could "duplex" with "exact registration," meaning that the copier could print on both sides of the paper (duplex), and the print alignment on both sides would be exact (registration). Shortly after the second meeting, Output and Danka entered into a contract for the sale of a CLC 5000 from Danka to Output in June, 2002. At Anderson's request, Danka inserted the following language into the contract: "Machine is guaranteed to back up files manually on heavier stock with exact registration."
Within thirty to forty days of the purchase, Anderson realized that the CLC 5000 could not duplex with exact registration. Over the next sixteen months, Output and Danka worked together in an attempt to modify the CLC 5000 to satisfy Output's needs, but they were unsuccessful. Output demanded a full refund, but Danka refused.
Output then sued Canon for fraudulent misrepresentation based on Hoffman's statement that the CLC 5000 could duplex with exact registration.[1] After a non-jury trial, the trial court entered final judgment in Canon's favor on that claim. The trial court did not comment on whether that claim succeeded or failed as a matter of fact. Rather, the trial court concluded that the claim failed as a matter of law:
Plaintiff had Danka insert that very language into the contract. Plaintiff cannot recover for fraud for an alleged oral misrepresentation that is adequately covered in the contract. See Peebles v. Sheridan Healthcare, Inc., 853 So.2d 559 (Fla. 4th DCA 2003); Advanced Mktg. Sys. Corp. v. ZK Yacht Sales, 830 So.2d 924 (Fla. 4th DCA 2002); Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053 (Fla. 4th DCA 1999). This is true because one cannot fraudulently induce another to enter a contract with representations that are already contained in the contract. In that case it is the language in the contract itself that induces the agreement.
Following entry of the final judgment, Output filed this appeal, arguing that the trial court erred in concluding Output's fraudulent misrepresentation claim failed as a matter of law regarding Hoffman's statement that the CLC 5000 could duplex with exact registration. Applying de novo review, see Bakerman v. Bombay Co., Inc., 961 So.2d 259, 261 (Fla.2007) (question of law is subject to de novo review), we agree with Output's argument, because the cases upon which the trial court relied do not apply to the facts of this case.
In Peebles, after a group of anesthesiologists sold their practice to a management company which retained them as employees, a group of them sued their former president and others, alleging, among other things, fraud in the inducement. 853 So.2d at 560. The essence of the claim was that the defendants led the plaintiffs to believe that everyone was receiving the same deal in the buyout, that all would have the same chance to be involved in management and own stock in the new entity, and that these representations were false. This court affirmed the lower court's post-trial ruling that the transactional documents which the plaintiffs signed barred their claims because the documents not only released the defendants, but also made known to the plaintiffs *944 that the defendants would be involved in the management of the new company and receive stock.
In Advanced Marketing, the purchasers of a yacht sued the seller's brokers, alleging, among other things, fraudulent misrepresentation. 830 So.2d at 925. The plaintiffs alleged that the defendants orally agreed to provide a substantial discount to the plaintiffs on any brokerage commission, but that the defendants breached that agreement by failing to return $90,000 of the commission which the defendants received from the transaction. This court affirmed the lower court's summary judgment for the defendants because the purchase agreement provided for the payment of the entire commission with no provision for a discount.
In Hillcrest, a plaintiff who had purchased a golf course for over $9 million later sued the real estate broker and others involved in the transaction for failing to reveal that the seller was only seeking to net $6.2 million, and had agreed to pay any amount over and above that as finder's fees or commissions. 727 So.2d at 1054. This court affirmed the lower court's holding that the plaintiff did not state a cause of action for fraud in the inducement because although the plaintiff alleged that the defendants misrepresented the price of the property, the purchase agreement clearly stated the price.
Common to each of our foregoing opinions was the factual finding that the later written contract expressly contradicted the alleged oral misrepresentations. In this case, however, Danka included in the contract the very representation regarding duplexing with exact registration which Canon's Hoffman made to Output. Thus, factually, the cases upon which the trial court relied do not apply to this case.
To state a cause of action for fraud in the inducement, a plaintiff must allege the following:
1. A misrepresentation of a material fact;
2. That the representor knew or should have known of the statement's falsity;
3. That the representor intended that the representation would induce another to rely on it; and
4. That the plaintiff suffered injury in justifiable reliance on the representation.
Hillcrest, 727 So.2d at 1055 (citation omitted). Output's claim that it entered into the contract with Danka based on Hoffman's alleged misrepresentation that the CLC 5000 could duplex with exact registration stated a cause of action for fraud in the inducement against Canon. The trial court erred in concluding otherwise.
Key to this court's opinion is the fact that Canon was not a party to the contract between Output and Danka. Had Canon been a party to the contract, then Output's claim that Hoffman misrepresented the CLC 5000's ability to duplex with exact registration would not have constituted a claim for fraud in the inducement, but rather a claim for fraud in the performance. Under those circumstances, the economic loss rule would have barred the claim:
When the fraud relates to the performance of the contract, the economic loss doctrine will limit the parties to their contractual remedies. However, when the fraud occurs in the connection with misrepresentations, statements, or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort.
*945 D & M Jupiter, Inc. v. Friedopfer, 853 So.2d 485, 487-88 (Fla. 4th DCA 2003) (citation omitted).
Because the trial court concluded that Output's fraudulent misrepresentation claim failed as a matter of law regarding Hoffman's statement that the CLC 5000 could duplex with exact registration, the trial court never made any findings of fact as to whether Output proved the elements of fraud in the inducement. On remand, the trial court will have to reconsider the facts to determine whether Output can meet the elements of fraud in the inducement regarding Hoffman's statement that the CLC 5000 could duplex with exact registration.
According to Canon's answer brief, Hillcrest "explains that a fraud claim is barred even as to those who are not parties to the contract." This court made no such statement in Hillcrest. Canon also argues that we should affirm on the exact registration fraud claim because the contract between Output and Danka expressly provided that the contract superseded any statements made before the contract. We assume that Canon is referring to the contract's "Equipment Order Terms and Conditions," which, at paragraph 15, states, in pertinent part:
15. Entire Agreement. This Equipment Order . . . constitutes the entire agreement between Customer and DANKA related to the acquisition and usage of the Equipment, and any and all prior negotiations, agreements (oral or written), or understandings are hereby superseded.
We read the plain language of paragraph 15 as applying only to prior discussions between Output and Danka, not Output and Canon.
Canon also contends the trial court found that the exact registration contract language, and not Hoffman's statement, induced Anderson to purchase the CLC 5000. However, because the trial court found that Output's claim failed as a matter of law, the trial court never made a finding of fact as to what induced Anderson to purchase the CLC 5000  Hoffman's statement regarding exact registration, or Danka's agreement to include the exact registration clause in the contract. Although the trial court's final judgment states, "it is the language in the contract itself that induces the agreement," it appears that the trial court was referring to its general conclusion of law, not a finding of fact particular to this case. If the trial court was making a finding of fact, then its final judgment was unclear in that regard.
Canon lastly argues that this court should affirm because Output presented no proof of damages. However, as Canon concedes in its brief, because the trial court found that Output's claim failed as a matter of law, the trial court never reached the question of damages. We should give the trial court the opportunity to answer that question before it receives our review.
Based on the foregoing, we reverse the final judgment only to the extent the trial court ruled in Canon's favor on Output's fraudulent misrepresentation claim regarding Hoffman's statement that the CLC 5000 could duplex with exact registration. We remand for the trial court to reconsider only that claim on its facts. In reconsidering that claim, the trial court may exercise its discretion to either review the trial record or reset the case for a new trial to determine whether Output has proven the elements of fraud in the inducement regarding Hoffman's statement that the CLC 5000 could duplex with exact registration. The remainder of the trial court's well-reasoned final judgment, as *946 well as the trial court's denial of Output's motion to amend the pleadings to conform to the evidence and motion for reconsideration, are affirmed.
STONE and HAZOURI, JJ., concur.
NOTES
[1] Output also sued Danka and Canon on other claims. Because we affirm the trial court's final judgment for Danka and Canon on those other claims, we choose not to address those other claims in this opinion.